### W. S. CHESSON v. RICHMOND CEDAR WORKS.

(Filed 13 September, 1916.)

**1. Principal and Agent—Contracts—Unusual Acts.**

A general agent has no implied authority to bind his principal by contracts unusual to agencies of like character, or beyond the usual scope of such agencies; and when he attempts to bind his principal by his extraordinary acts, the one dealing with him is put upon notice, and required to ascertain from some authoritative source whether such agent had the power to bind his principal thereby.

**2. Same—Logging Boss—Indefinite Contracts—Cutting Timber.**

One who has been employed as a field superintendent of logging operations, with authority to have timber cut from time to time as needed for a corporation, his principal, and subject to be discharged at any time, has no implied authority to bind his principal with an indefinite contract for cutting the timber from a large tract of land which might last for years, and involving the expenditure of many thousands of dollars, and

in an action to recover damages for a breach of the contract it is neces-
sary for the plaintiff to show that the agent had express authority or
that the principal ratified his act.

**3. Principal and Agent—Trials—Evidence—Questions of Law—Nonsuit.**

Whether one assuming to act as an agent in making a contract for
another made the contract sued on is a question for the jury when the
evidence is conflicting; but whether there is more than a scintilla of
evidence of such agency is a question of law; and if there is not, a
judgment of nonsuit is proper.

APPEAL by defendant from *Allen, J.,* at April Term, 1916, of TYRRELL.

*I. M. Meekins and P. W. McMullan for plaintiff.*
*Ward & Thompson and Winston & Biggs for defendant.*

CLARK, C. J.   This action is based upon the complaint that the defend-
ant company, through its agent, one L. E. Shucker, made a verbal con-
tract with the plaintiff to cut and top all the merchantable juniper tim-
ber of the defendant in that part of the Dismal Swamp owned by the
defendant, containing some 5,000 or more acres, at the rate of 6½ cents
per tree.   The defendant denied that Shucker made such contract or
that he had any authority to do so, and averred that the timber cut by
the plaintiff was under a contract to cut the same, restricted to the serv-
ice as performed from time to time, and the plaintiff admits that he
was paid up to the time of his discharge.

The evidence shows that the alleged contract was indefinite as to the
time of cutting, and that the quantity of timber to be cut, with the force
which the plaintiff employed, would require several years.   The plaintiff
estimates three years and the defendant's estimate is from ten to twenty
years.

The plaintiff testifies that he made such verbal contract with Shucker,
the wood boss or field manager of the defendant; that it was to cover
the cutting of the entire area of the Dismal Swamp owned by the defend-
ant; that this verbal contract was made in a blacksmith's shop, no one
being present except the plaintiff and the agent, Shucker.   It was further
in evidence that the plaintiff had little experience with such work, and
had only worked for the defendant one month previously, and that said
Shucker had been in the employment of the company himself for only
seven months, and was subject to discharge at any time.   Shucker denied
having made such contract.

The defendant had a general manager, Mr. Warwick, which fact was
known to the plaintiff.   Shucker was not an officer of the company, nor
its general superintendent, and denied that he had any authority to
make such contract or any contract for a definite time or that was not
subject to the approval of the general manager; and testified that he was

3—172

merely a field superintendent of logging operations, with authority to have timber cut from time to time as needed.

The alleged contract is so unusual, extraordinary, and unique that it is not to be assumed that said Shucker had authority to make it. It was no function of his position. If it were, Shucker, a superintendent of logging, holding at will, with authority to have the timber cut as needed, could bind his employers by a verbal contract, not approved by the company or its general manager, which might last for twenty years and involve the expenditure of many thousands of dollars, without any bond or guarantee given by the plaintiff for the faithful performance of his work, and such contract would bind the company, should it sell its timber to another party.

There is no testimony of any express authority given to Shucker to make such contract, or any ratification of such contract by the company.

In Mechem on Agency, sec. 389, it is said: "The person dealing with the agent must also act with ordinary prudence and reasonable diligence. If the character assumed by the agent is of such a suspicious or unreasonable nature, or if the authority which he seeks to exercise is of such an unusual or improbable character as would suffice to put an ordinarily prudent man upon his guard, the party dealing with him may not shut his eyes to the real state of the case, but should either refuse to deal with the agent at all or should ascertain from the principal the true condition of affairs."

In *Stephens v. Lumber Co.,* 160 N. C., 107, it is said that a principal is not bound by the act of the general agent, unauthorized by him, so unusual and remarkable as to arouse the inquiry of a man of average business prudence as to whether the authority had actually been conferred; for third persons cannot assume that an agent's acts are authorized unless they are within the scope of the duties ordinarily conferred upon agencies of that character, nor when the transaction is of a nature so unusual that the other party should be put upon inquiry to ascertain the actual authority of the agent of the company to make a contract of that nature. This opinion by *Judge Hoke* discusses the proposition so thoroughly (with the citation of many precedents in point) that it is unnecessary for us to do more than refer to what is there so well said. To the same purport, *Newberry v. R. R.,* 160 N. C., 156; *Furniture Co. v. Russell,* 171 N. C., 474. In *Gooding v. Moore,* 150 N. C., 195, the agent was "a general agent not only in purchasing the plant and timber, but in managing the business." The contract was within the apparent scope of such agency, and it was held that the other party was not bound by restrictions which were not made known to him.

In this case the extent of the contract, which may be twenty years, and the amount of the compensation, which it is claimed by the defend-

ant may aggregate $60,000, and the admission of the plaintiff that the duration and amount are not limited in the terms of the contract, on its face require such unusual authority in the temporary agent of the company that the plaintiff should have ascertained by inquiry of the officials of the company, of those "higher up," whether the alleged agent was possessed of such extraordinary powers. Not having done so, it was incumbent upon him in this trial to show that Shucker in fact possessed such authority. On the contrary, there is absolute denial by Shucker and by the company that he possessed such authority, and the testimony of Shucker that he did not make the contract. There is no evidence tending to show knowledge by the company of such unusual contract, or ratification.

Whether Shucker in fact made such contract was a matter for the jury; but in the absence of any scintilla of evidence that Shucker had authority to make such an unusual contract, which power could not be implied merely from his position as local wood boss, the motion for a nonsuit should have been granted.

Error.